**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

TAYLOR'S TINS, LLC,

Plaintiff,

-against-

GOLFIRE, INC. and
JOHN D. PRICE, JR.,

Defendants.

Civil Action No.: 5:26-cv-2170 (GTS/CBF)

## COMPLAINT AND JURY DEMAND

Plaintiff, Taylor's Tins, LLC ("Plaintiff" or "Taylor's Tins"), by and through undersigned counsel, demands a trial by jury on all issues so triable and for its Complaint against Defendants Golfire, Inc. ("Golfire") and John D. Price, Jr. ("Price") (collectively "Defendants"), alleges the following:

## NATURE OF THE ACTION

1. Plaintiff brings this action for trademark infringement, false designation of origin, trade dress infringement, unfair competition and related claims arising under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and the common law of the State of New York.

2. Plaintiff is a nationally recognized designer, manufacturer, and seller of custom firefighter helmet shields and related firefighting products, and the operator of an online retail store through which those products are marketed and sold nationwide.

3. For nearly a decade, Plaintiff has continuously used the TAYLOR'S TINS mark.

4. Plaintiff uses TAYLOR'S TINS and distinctive product and service

branding in interstate commerce, while simultaneously investing substantial time, expense, and resources into building a reputation for high-quality custom firefighter products.

5. Plaintiff owns valuable intellectual property rights arising from its longstanding use of the TAYLOR'S TINS name, its distinctive design logo, and the Classic Shield Trade Dress in commerce.

6. Plaintiff has a federally registered trademark for TAYLOR'S TINS.

7. Plaintiff has common law trademark rights in addition to source-identifying marks and logos used by Plaintiff in connection with firefighter helmet shields.

8. Further, Plaintiff has common law trade dress rights in the distinctive overall appearance of Plaintiff's Classic Shield Design.

9. Through years of nationwide sales, advertising, social media promotion, and customer recognition, Plaintiff's trademarks, branding, and distinctive helmet shield designs have become well known throughout the firefighter community and have acquired substantial goodwill identifying Plaintiff as the source of its products.

10. Prior to Defendants' infringing conduct, Plaintiff had sold more than 120,000 custom helmet shields incorporating its Classic Shield Design.

11. Plaintiff's customers have publicly shared thousands of photographs of Plaintiff's products through social media and other online platforms, resulting in widespread recognition of Plaintiff's distinctive shield configuration within the relevant market.

12. Defendants compete directly with Plaintiff in a niche market for custom firefighter helmet shields and related products.

13. Defendants have a history of infringing on Plaintiff's intellectual property rights.

14. In 2022, after Defendants began manufacturing and selling firefighter helmet shields utilizing Plaintiff's distinctive Classic Shield Design, Plaintiff notified Defendants that their conduct infringed Plaintiff's rights and was causing confusion within the marketplace.

15. Plaintiff further advised Defendants that consumers had already questioned whether Golfire was affiliated with or authorized by Taylor's Tins.

16. Defendant Price, acting on behalf of Golfire, acknowledged Plaintiff's concerns in writing and expressly promised that Golfire would immediately cease producing helmet shields utilizing Plaintiff's Classic Shield Design, destroy all infringing materials in its possession, and discontinue the challenged conduct.

17. Defendants further represented that Golfire had sold only a single infringing shield and had otherwise ceased their infringing activities.

18. Relying on Defendants' promises, Plaintiff did not pursue litigation in 2022.

19. Rather than fulfilling its promises, Defendants subsequently resumed the infringing conduct and materially expanded their efforts to trade upon Plaintiff's goodwill.

20. Defendants resumed manufacturing and selling helmet shields utilizing Plaintiff's Classic Shield Design, violating their prior express written agreement to discontinue such products.

21. Defendants further adopted the term "TIN" and "TINS" in connection with competing firefighter products, promoting competing products using Plaintiff's TAYLOR'S TINS mark through hashtags and online marketing, adopted a logo constituting a colorable imitation of Plaintiff's distinctive design logo, and incorporated design features and overall product presentation closely resembling Plaintiff's products.

22. Ignoring Plaintiff's May 4, 2026 cease-and-desist correspondence,

Defendants again declined to fully comply with Plaintiff's demands.

23. Defendants merely modified certain aspects of their branding while continuing to exploit Plaintiff's goodwill through new methods designed to divert Plaintiff's customers.

24. Most notably, Defendants now advertise and promote what they refer to as a "Competitor Special," in which prospective customers are instructed to visit Plaintiff's website, utilize Plaintiff's online Shield Builder to create a custom helmet shield design, and then submit that design to Defendants so that Defendants may manufacture a substantially similar product in direct competition with Plaintiff.

25. Defendants' conduct is knowing, intentional, and willful.

26. Continuing their unlawful conduct after receiving repeated notice, Defendants repeatedly altered the form of their infringement while continuing the same underlying scheme to capitalize on Plaintiff's goodwill.

27. Each time Plaintiff sought to stop one form of infringement, Defendants adopted another.

28. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer irreparable harm, including loss of goodwill, damage to its reputation, diversion of customers, lost sales, diminished control over its brand, and other injuries for which there is no adequate remedy at law.

## **PARTIES**

29. Plaintiff, Taylor's Tins, is a limited liability company organized and existing under the laws of the State of Missouri with a principal place of business located at 346 Co Hwy 250, Benton, MO 63736.

30. Upon information and belief, Defendant Golfire is a corporation organized and existing under the laws of the State of New York with a principal place of business located in Baldwinsville, NY 13027.

31. Upon information and belief, Defendant Price is an individual who resides in and is domiciled in the State of New York.

## JURISDICTION AND VENUE

32. This Court has original subject matter jurisdiction over Plaintiff's claims arising under the Lanham Act pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121.

33. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same nucleus of operative facts as Plaintiff's federal claims.

34. This Court has personal jurisdiction over Defendant Golfire because Golfire is a New York corporation with its principal place of business in Baldwinsville, Onondaga County, New York, and regularly conducts business with this District.

35. This Court has personal jurisdiction over Defendant John D. Price, Jr., because he is a resident of the State of New York, resides within this District, and personally directed, authorized, participated in, and controlled the acts of infringement and unfair competition alleged herein.

36. Upon information and belief, Price is the founder, owner, chief executive officer, and principal decision-maker of Golfire, and exercised direct control over the adoption, marketing, promotion, and continued use of the infringing marks, branding, and related conduct described in this Complaint.

37. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this judicial district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District. Upon information and belief, Defendants developed, marketed, promoted and sold the accused products from Onondaga County, New York, including through the interactive website located at www.golfireshields.com.

## FACTUAL ALLEGATIONS

### Taylor's Tins and Its Intellectual Property Rights

38. Taylor's Tins is a designer, manufacturer, and seller of custom firefighter helmet shields and related customizable products.

39. Plaintiff markets and sells its products to firefighters, fire departments, emergency service organizations, and other consumers throughout the United States through its website, online store, social media platforms, authorized dealers, and other sales and marketing channels.

40. Since at least April 2017, Plaintiff has continuously designed, advertised, manufactured, and sold custom metal firefighter helmet shields featuring a distinctive product configuration and visual presentation known as its "Classic Shield Design." Representative examples of Plaintiff's Classic Shield Design are depicted in **Exhibit A**.

41. The Classic Shield Design includes a distinctive combination and arrangement of visual elements that, when considered together as a whole, create a recognizable overall commercial impression associated with Taylor's Tins.

42. The elements comprising the Classic Shield Design include, among other things: (a) a pentagonal shield configuration featuring a pronounced central peak at the top; (b)

upper sides that slope downward from the central peak before transitioning into outwardly extending lateral portions; (c) lower sides that taper inward toward a slightly curved bottom edge; and (d) visual arrangements of customized wording, numbers, insignia, and other design elements within the shield.

43. Certain iterations of the Classic Shield Design also incorporate curved banner elements positioned in the upper and/or lower portions of the shield, with customized lettering incorporated within those banners.

44. Plaintiff's asserted Classic Shield trade dress (the "Classic Shield Trade Dress") is not limited to any particular color combination, wording, customer name, department name, number, insignia, or individual graphic element. Those elements may vary based upon a customer's customization selections while the distinctive overall product configuration and commercial presentation remain recognizable across Plaintiff's products.

45. Plaintiff does not claim exclusive rights in commonplace firefighter imagery, lettering, numbers, banners, or other individual elements standing alone.

46. Rather, the Classic Shield Trade Dress consists of the distinctive combination and arrangement of the nonfunctional visual elements comprising the overall Classic Shield Design.

47. The features comprising the Classic Shield Trade Dress are ornamental and source-identifying and are not essential to the use or purpose of a firefighter helmet shield.

48. Numerous alternative shapes, configurations, borders, layouts, and visual presentations are available to competitors, and competitors can manufacture and sell custom firefighter helmet shields without adopting the overall configuration and commercial impression of Plaintiff's Classic Shield Trade Dress.

49. Plaintiff has continuously and extensively used the Classic Shield Trade Dress since at least 2017 and has prominently displayed products bearing that trade dress through its website, social media, advertising, authorized dealers, and other promotional and sales channels.




Example of Plaintiff's Classic Shield Design

50. By August 2022 alone, Plaintiff sold more than 120,000 custom helmet shields and developed a substantial following within the firefighter community. By that time, customers published more than 12,000 social-media posts displaying and tagging Taylor's Tins and its products.

51. To date, Plaintiff sold over 1 million custom helmet shields.

52. Through Plaintiff's extensive sales, substantially exclusive and continuous use, advertising, promotion, and widespread consumer exposure, the Classic Shield Trade Dress has acquired secondary meaning among relevant consumers and has come to identify Taylor's Tins as the source of products bearing that distinctive overall appearance.

53. In addition to its rights in the Classic Shield Trade Dress, Plaintiff owns all

right, title, and interest in the federally registered TAYLOR'S TINS trademark, Registration No. 7954315 (the "Registered Mark"). The Registration Certificate for the Registered Mark is attached hereto as **Exhibit B**.

54. Plaintiff also continuously uses additional source-identifying marks, including its design logo and the TAYLOR'S TINS mark in connection with firefighter helmet shields, long before Defendants' infringing conduct. Through Plaintiff's prior and continuous use, Plaintiff has acquired valuable common law trademark rights in those marks.

55. As used herein, the "TAYLOR'S TINS Marks" refers to the Registered Mark, Plaintiff's common law TAYLOR'S TINS mark as used in connection with firefighter helmet shields, Plaintiff's design logo, and the goodwill associated with each of those marks. Plaintiff also filed federal trademark applications covering certain of these marks, copies of which are attached collectively as **Exhibit C**.

56. Plaintiff has continuously used the TAYLOR'S TINS Marks and associated branding in interstate commerce in connection with its products and services.

57. Plaintiff developed and continues to develop substantial goodwill and consumer recognition in the TAYLOR'S TINS brand.

58. Plaintiff also invested and continues to invest substantial time, expense, and creative effort in preparing custom designs and product mockups for prospective customers and in developing and maintaining an online retail store.

59. Plaintiff's online retail store includes an online customizable helmet shield builder (the "Shield Builder") through which consumers can create and customize proposed helmet shield designs for products offered by Plaintiff.

**Defendants' Initial Copying of Plaintiff's Classic Shield Design**

60. Golfire competes directly with Plaintiff in the specialized market for custom firefighter helmet shields and related products.

61. Golfire markets its products to substantially the same consumers served by Plaintiff.

62. Defendants have known of Taylor's Tins and its product since at least 2022 and know about Plaintiff's commercial success and reputation within the firefighter community.

63. In or around 2022, Plaintiff discovered that Golfire started manufacturing, advertising, and offering for sale metal firefighter helmet shields that replicated Plaintiff's Classic Shield Design.

64. The similarity was sufficiently pronounced that members of the relevant consuming public independently recognized Golfire's products as copying Taylor's Tins products.

65. In one such exchange, a consumer asked Defendant Price whether Golfire had become "a Taylor tins dealer." Price responded that Golfire was "making [Golfire's] own to compete against The Fire Store." The Fire Store is an authorized dealer of Taylor's Tins' products.

66. Plaintiff also discovered evidence that Golfire copied product-related instructional language used in connection with Plaintiff's products, including instructions concerning installation of the helmet shields that appeared on the website of a licensed Taylor's Tins vendor.

67. The similarities in Golfire's products and related marketing materials to Plaintiff's, together with Price's express acknowledgment that Golfire was manufacturing its

products to compete against Taylor's Tins, demonstrated Defendants' actual knowledge of Plaintiff and its products.

**Plaintiff Places Defendants on Express Notice in 2022**

68. On August 5, 2022, Plaintiff, through its counsel, sent a formal cease-and-desist letter to Price and Golfire concerning Defendants' manufacture and sale of products utilizing the Classic Shield Design (the "First Demand"). A true and correct copy of the First Demand is attached hereto as **Exhibit D**.

69. The First Demand expressly advised Defendants of Plaintiff's intellectual property rights in the Classic Shield Design and of the substantial goodwill Plaintiff developed through years of use, advertising, and sales.

70. The letter further notified Defendants of evidence that consumers were confusing Golfire's products with Taylor's Tins' products and questioning whether Golfire was an authorized Taylor's Tins dealer.

71. Plaintiff demanded, among other things, that Golfire cease further production of metal helmet shields utilizing the Classic Shield Design and other designations likely to cause consumer confusion with Plaintiff's products, destroy materials in its possession or control bearing confusing designations, and provide an accounting of revenue and profits derived from its challenged products.

72. The First Demand, therefore, placed Defendants on actual and unequivocal notice of Plaintiff's claimed rights and Plaintiff's objection to Golfire's imitation of its products.

73. Golfire responded to Plaintiff's First Demand in writing ("Golfire's Response") through Price, its President and Chief Executive Officer.

74. In Golfire's Response, Defendants acknowledged Plaintiff's concerns and expressly represented that Golfire would "cease and desist all further production of metal helmet shields specifically utilizing the Taylor's Tins Classic Shield Design."

75. Defendants further promised to "destroy any materials in [their] possession or control which closely resemble the Taylor's Tins Classic Shield Design."

76. Defendants also promised a complete accounting of Golfire's distribution of the challenged shields, stating that three shields had been given away and that one shield had been sold for twenty-five dollars.

77. Price personally confirmed that he immediately complied with Plaintiff's demands and affirmatively stated that he had "completed all items" identified in Golfire's Response.

78. Relying on Defendants' written representations, Plaintiff did not pursue litigation in 2022.

79. Since August of 2022, Defendants therefore possess actual knowledge of Plaintiff, Plaintiff's products, Plaintiff's intellectual property rights, the likelihood of marketplace confusion, and Plaintiff's express objection to Defendants' imitation of its products.

**Defendants Resume and Escalate Their Conduct**

80. Despite Defendants' actual knowledge of Plaintiff's rights and Defendants' express written representations that they would discontinue all infringing conduct, Defendants subsequently resumed the infringement.

81. In fact, Defendants materially expanded their efforts to imitate Plaintiff's products and trade upon the goodwill associated with the Taylor's Tins brand.

82. Plaintiff discovered that Golfire began using the terms “TIN” and “TINS” to advertise and sell competing firefighter helmet shields.

83. Defendants adopted the use of “TIN” and “TINS” after years of actual knowledge of Plaintiff’s use of TINS as part of its brand identity, Plaintiff’s commercial success, and Plaintiff’s prior objections to Defendants’ imitation of its products.

84. Defendants also adopted and used a design logo constituting a colorable imitation of Plaintiff’s design logo (the “Infringing Design Logo”). A representative example of Plaintiff’s Design Logo and Defendants’ Infringing Design Logo is shown below.




Taylor’s Tins’ Design Logo




Golfire’s Infringing Design Logo

85. Defendants’ adoption of the confusingly similar design logo and “TINS” branding is a willful escalation of Defendants’ infringing conduct that began in 2022.

86. With express knowledge that consumers were already associating and confusing Golfire’s products with Taylor’s Tins, Defendants adopted additional branding and design elements that further associated Golfire’s competing business with Plaintiff.

87. Even more inflammatory, Defendants began promoting their competing products through social media using the hashtag #taylorstins.

88. Defendants’ escalated conduct is willful.

89. Defendants' use of Plaintiff's exact brand name as a hashtag in advertisements for directly competing products caused or was likely to cause consumers searching for or interacting with Taylor's Tins' content to encounter Golfire's competing products.

90. Defendants also used photographs depicting actual Taylor's Tins products in connection with the advertising and promotion of Golfire's competing helmet shields.

91. By using imagery of Plaintiff's products to promote Golfire's competing products, Defendants are encouraging or inducing consumers to believe that the products depicted were manufactured, offered, sponsored, or approved by Golfire, or that Golfire's products were affiliated with or otherwise associated with Taylor's Tins. A representative example of Defendants' use of Plaintiff's product imagery is shown below and attached hereto as **Exhibit E**.




92. Defendants also used or copied specific designs and design materials created by and/or associated with Plaintiff.

93. On multiple occasions, Plaintiff discovered that Golfire manufactured or solicited offers to manufacture competing helmet shields based upon designs originally created

by Taylor's Tins for actual and prospective customers.

94. In one such instance, a prospective customer contacted Plaintiff after receiving a substantially similar design from Golfire and questioned whether Golfire was affiliated with Taylor's Tins.

95. Information provided by the prospective customer demonstrated that Golfire was using design materials directly associated with Taylor's Tins in connection with its offer to manufacture competing helmet shields.

96. Plaintiff identified multiple social media posts where Defendants published a photo of Plaintiff's design created for a prospective customer next to an identical helmet shield reproduced by the Defendants.

97. In another instance, Plaintiff prepared a series of customizable helmet shields mockups for a prospective customer in connection with a potential order from Plaintiff.

98. The mockups that Plaintiff prepared depicted a series of individualized helmet shields incorporating specific combinations of department names, individual names, ranks, identifying numbers, colors, graphics, banner treatments, and other design elements.

99. Taylor's Tins provided the proposed mockups to the prospective customer as a step to secure a custom order. The prospective customer ultimately did not purchase the proposed helmet shields from Plaintiff.

100. A few weeks after Plaintiff provided the mockups to the prospective customer, Golfire published photographs on its social media account depicting a completed order of helmet shields that were substantially similar to the designs previously created by Taylor's Tins for the same prospective customer.

101. The products manufactured and advertised by Golfire corresponded to the

specific individualized designs previously prepared by Taylor's Tins, including the same department names, individual names, rank designations, identifying numbers, color combinations, and substantially identical arrangements of visual elements.

102. Because of substantial similarity between the series of individualized mockups prepared by Taylor's Tins and the completed products subsequently manufactured and publicly advertised by Golfire, together with the close temporal proximity between the two events, Golfire had access to and copied or used Plaintiff's mockups to manufacture the competing, infringing products.

103. The evidence demonstrates that Defendants accessed Plaintiff's designs and knowingly used or imitated Taylor's Tins design materials in connection with the manufacture and sale of directly infringing products.

104. Each of these acts occurred after Defendants had acquired actual knowledge of Taylor's Tins and its products, received formal notice of Plaintiff's claimed rights, and promised in writing that they would discontinue the infringing conduct.

**Plaintiff Again Demands that Defendants Cease Their Infringing Conduct**

105. On May 4, 2026, Plaintiff, through counsel, again sent Defendants a formal cease-and-desist letter, this time addressing Defendants' use of "TINS," their confusingly similar design logo, and related infringing branding and marketing (the "Second Demand"). A true and correct copy of the Second Demand is attached hereto as **Exhibit F**.

106. Plaintiff specifically demanded that Golfire cease using "TINS" in connection with its products and marketing, cease using confusingly similar logos and branding, remove infringing content from its website and social media accounts, destroy infringing materials, and confirm its compliance.

107. Defendants responded to the Second Demand only that they would "remove the current design we are using", but did not address the full scope of Plaintiff's demands, including Defendants' use of "TIN" or "TINS," their use of "#taylorstins," or other conduct designed to intentionally associate Golfire's products with Plaintiff.

108. Despite Defendants' promise to remove the challenged design, consistent with Defendants' reputation and pattern, Defendants continue to display and use the Infringing Logo, and continue to use "TINS" in connection with the advertising and promotion of their competing helmet shields to date.

**Defendants Continue Manufacturing Products It Previously Agreed It Would Discontinue**

109. Plaintiff recently discovered that Golfire continues to manufacture firefighter helmet shields utilizing a shield shape substantially similar to the Classic Shield Design (the "Infringing Shields") that Golfire expressly agreed to stop producing in 2022.

110. Golfire currently manufactures the Infringing Shields through a third-party retailer, 911ERP.

111. Under this arrangement, 911ERP advertises and sells the Infringing Shields to consumers on its website. Once ordered, the Infringing Shields are manufactured and shipped by Golfire.

112. Golfire therefore remains directly involved in, and commercially benefits from, the manufacture and sale of Infringing Shields violating its prior written agreement to "cease and desist all further production of metal helmet shields specifically utilizing the Taylor's Tins Classic Shield Design."

113. Golfire's continued manufacture of these products directly violates Price's promise to personally undertake the task of complying with Plaintiff's demands to "complete[]

all items" identified in Golfire's Response, including the cessation of further production and destruction of materials closely resembling the Classic Shield Design.

114. Golfire's continued manufacture and direct fulfillment of the Infringing Shields demonstrates not only that Defendants did not permanently discontinue the infringing conduct as promised, but they willfully continue the infringing conduct to date.

115. Defendants' continued manufacture of the Infringing Shields, together with their subsequent adoption of confusingly similar branding, use of the Taylor's Tins Marks on their website and in social media marketing, and other conduct alleged herein, constitutes further evidence that Defendants' calculated actions are knowing, deliberate, and willful.

**Defendants Launch the "Competitor Special"**

116. After receiving the Second Demand, Defendants launched a program identified as the "Competitor Special." A true and accurate screenshot from Golfire's website promoting the Competitor's Special is attached hereto as **Exhibit G**.

117. Through the Competitor Special, Defendants expressly target consumers interested in purchasing Plaintiff's products.

118. Defendants then encourage consumers to use Plaintiff's own website and online design resources to facilitate purchases from Golfire.

119. Specifically, Defendants direct prospective customers to visit Taylor's Tins' website using a link that automatically routes those customers to Plaintiff's online Shield Builder to create a customized helmet shield design.

120. Defendants then instruct those customers to provide Plaintiff's design to Golfire so that Golfire can manufacture Plaintiff's design at a competing price.

121. Through this program, Defendants intentionally encourage prospective

customers to use Plaintiff's website, infrastructure, design tools, business resources and customer experience for Defendants' own commercial benefit.

122. The Competitor Special is specifically designed to intercept consumers interested in Taylor's Tins products and divert their purchases to Golfire.

123. The Competitor Special is direct evidence of Defendants' continued willful infringing conduct.

124. Through the Competitor Special, Defendants seek to obtain the commercial benefit of Plaintiff's investment in attracting prospective customers and providing those customers with Plaintiff's tools to create customized products, while depriving Plaintiff of the resulting sales and consumer retention.

125. Defendants' conduct also interferes with Plaintiff's online retail store services by directing consumers to Plaintiff's website and online customization platform for the purpose of facilitating purchases from Golfire rather than Plaintiff.

126. Defendants thereby exploit the goodwill associated with Plaintiff's online retail store services while willfully diverting sales and customer relationships to Defendants.

127. Plaintiff's website analytics reveal that users have actually been referred to Plaintiff's website from Golfire's website, confirming that Defendants direct prospective customers to Plaintiff's online retail store and Shield Builder with the intent to steal sales, capture Plaintiff's consumers, and further willfully infringe on Plaintiff's rights.

128. Defendants' recent conduct is particularly significant in light of the parties' prior history. Defendants implemented this promotion after years of actual knowledge of Plaintiff and its products, after receiving multiple cease-and-desist demands, and after previously representing that it would cease infringing conduct imitating Plaintiff's products.

129. Defendants continued and evolving conduct demonstrates a deliberate pattern of seeking new methods to capitalize upon Plaintiff's commercial success, goodwill, brand recognition, product designs, and business resources.

**Defendants' Conduct is Knowing, Intentional, and Willful**

130. Since at least 2022, Defendants possess actual knowledge of Plaintiff and its products.

131. Defendants were expressly notified in 2022 that consumers were confusing Golfire's products with Taylor's Tins products.

132. Defendants expressly agreed in writing to cease producing products utilizing Plaintiff's Classic Shield Design and to destroy closely resembling materials.

133. Nevertheless, Defendants thereafter adopted "TIN" and "TINS" branding, adopted the Infringing Design Logo, used the hashtag #taylorstins to promote competing products, used photographs of Plaintiff's actual products to market Golfire's competing goods, misappropriated Taylor's Tins design materials, and continued offering substantially similar product configurations.

134. After receiving the Second Demand in May 2026, Defendants only made partial changes to their conduct, continued implementing marketing practices designed to exploit Plaintiff's goodwill and divert Plaintiff's prospective customers, including directing prospective customers to Plaintiff's own website and Shield Builder as part of Golfire's competing sales strategy.

135. Defendants' conduct therefore constitutes a continuing and escalating pattern of knowing and intentional infringement, misappropriation, and unfair competition

undertaken with actual knowledge of Plaintiff's rights.

136. Defendant Price personally participated in, authorized, directed, approved, and controlled the conduct alleged herein.

137. Price personally responded to Plaintiff's First Demand, personally represented that Golfire had ceased the challenged conduct, and, upon information and belief, subsequently participated in and directed Golfire's renewed and expanded infringing conduct.

138. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer harm, including loss of control over its trademarks, online retail services, brand identity, diversion of customers and sales, damage to its goodwill and reputation, and other monetary and irreparable injuries.

139. Unless enjoined, Defendants are likely to continue engaging in infringing and unfair competitive conduct.

140. In fact, Defendants actively demonstrate that their infringing, damaging conduct will only escalate if not enjoined.

**COUNT I**
**Federal Trademark Infringement 15 U.S.C. § 1114**

141. Plaintiff repeats and realleges paragraphs 1-140 as though fully set forth herein.

142. Plaintiff owns all rights, title, and interest in the federally Registered Mark.

143. Plaintiff's Registered Mark is valid and subsisting and constitutes prima facie evidence of the validity of the Registered Mark, Plaintiff's ownership thereof, and Plaintiff's exclusive right to use the Registered Mark in commerce with the goods identified in the registration.

144. Plaintiff has continuously used the Registered Mark in interstate commerce

in connection with the advertising, marketing, and sale of its customizable products, as well as in connection with Plaintiff's online retail store services.

145. Without Plaintiff's authorization or consent, Defendants used and continue to use reproductions, copies, colorable imitations, and confusingly similar variations of the Registered Mark in commerce in connection with the advertising, promotion, offering for sale, and sale of products that directly compete with Plaintiff's products.

146. Among other things, Defendants used and continue to use (1) the terms "TIN" and "TINS" in connection with their directly competing products and services and (2) Plaintiff's Taylor's Tins mark through the hashtag #taylorstins in social media content promoting Golfire's competing products and services.

147. Defendants challenged uses occurred in connection with products and services that are identical or highly similar to those offered by Plaintiff, are marketed to the same consumers, and are advertised and sold through overlapping channels of trade.

148. Defendants' use of the challenged marks is likely to cause consumers to believe, mistakenly, that Defendants or their products and services are affiliated with, connected with, sponsored by, authorized by, or otherwise associated with Taylor's Tins.

149. The likelihood of confusion is heightened by the parties' direct competition, the similarity of the products and services, the overlap in consumers and marketing channels, Defendants' longstanding actual knowledge of Taylor's Tins, Defendants' direct diversion of Plaintiff's consumers to Golfire, and Defendants' simultaneous imitation of other aspects of Plaintiff's branding and product presentation.

150. Defendants' knowingly and intentionally undertook the use of Plaintiff's Registered Mark and confusingly similar variations thereof, with actual knowledge of

Plaintiff's prior rights.

151. Price personally participated in, authorized, directed, approved, and controlled Golfire's challenged use of the Registered Mark and confusingly similar designations and is individually liable for his own participation in the infringing conduct.

152. Defendants' conduct constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

153. As a direct and proximate result of Defendants' infringement, Plaintiff suffered and continues to suffer damages, loss of sales and business opportunities, loss of control over its brand, and injury to its goodwill and reputation.

154. Defendants' conduct is knowing, intentional, and willful, entitling Plaintiff to recover Defendants' profits, Plaintiff's damages, the costs of this action, and such enhanced monetary relief and attorneys' fees as permitted under 15 U.S.C. § 1117.

155. Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and other applicable law.

**COUNT II**
**False Designation of Origin and Federal Unfair Competition 15 U.S.C. § 1125(a)(1)(A)**

156. Plaintiff repeats and realleges paragraphs 1-140 as though fully set forth herein.

157. Through Plaintiff's extensive and continuous use in commerce, Plaintiff owns valuable common law trademark rights in the TAYLOR'S TINS mark as used in connection with firefighter products, online retail store services, Plaintiff's Design Logo, and other source-identifying indicia associated with its business.

158. Defendants used and continues to use in commerce words, terms, names, symbols, devices, designs, and combinations thereof that imitate or otherwise evoke Plaintiff

and its source-identifying branding in connection with Defendants' directly competing products, services and commercial activities.

159. Defendants' conduct includes, among other things, the use of "TIN" and "TINS" in connection with competing products and services, use of the TAYLOR'S TINS mark in social-media marketing through #taylorstins, adoption of an Infringing Design Logo, use of photographs of Plaintiff's products to advertise and promote Golfire's competing products, and use of other branding and product presentation similar to that associated with Plaintiff.

160. Defendants engaged in this conduct while marketing and selling products and services that directly compete with Plaintiff's products and services to substantially the same consumers through overlapping channels of trade.

161. Defendants' conduct is likely to cause confusion, mistake, or deception concerning the affiliation, connection, or association between Defendants and Plaintiff and concerning the origin, sponsorship, or approval of Defendants' goods and commercial activities.

162. Plaintiff retains documented instances of actual confusion in which consumers encountering Golfire's products and services questioned whether Golfire was affiliated with Taylor's Tins or was an authorized Taylor's Tins dealer.

163. Defendants' conduct was undertaken with actual knowledge of Taylor's Tins and its rights and as part of a continuing course of infringing conduct intended to capitalize upon the recognition and goodwill Plaintiff developed in the marketplace.

164. Price personally participated in, authorized, directed, approved, and controlled the conduct alleged herein and is individually liable for his own participation in that conduct.

165. Defendants' acts constitute false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

166. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer monetary damages and irreparable injury, including loss of control over its reputation and goodwill and diversion of actual and prospective customers.

167. Defendants' conduct has been knowing, intentional, and willful, entitling Plaintiff to the remedies available under 15 U.S.C. §§ 1116 and 1117 and other applicable law.

**COUNT III**
**Trade Dress Infringement and Unfair Competition 15 U.S.C. § 1125(a)(1)(A)**

168. Plaintiff repeats and realleges paragraphs 1-140 as though fully set forth herein.

169. Since at least April 2017, Plaintiff continuously used and continues to use the Classic Shield Trade Dress, as specifically described in Paragraphs 40 through 47 above, in connection with the manufacture, advertising, promotion, and sale of its custom firefighter helmet shields.

170. Plaintiff's Classic Shield Trade Dress consists of the specific combination and arrangement of nonfunctional product-design features described herein and depicted in Exhibit A, which, when considered together as a whole, create a distinctive and recognizable overall commercial impression.

171. The Classic Shield Trade Dress is nonfunctional.

172. The particular combination and arrangement of features comprising the Classic Shield Trade Dress is not essential to the use or purpose of a firefighter helmet shield and does not affect the cost or quality of the product.

173. Numerous alternative product configurations, shapes, contours, layouts,

borders, and visual presentations are available to competitors, and protection of Plaintiff's Classic Shield Trade Dress would not place competitors at a significant non-reputation-related disadvantage.

174. Through Plaintiff's continuous and substantially exclusive use of the Classic Shield Trade Dress since at least 2017, extensive nationwide sales, substantial advertising and promotion, widespread social-media exposure, and consumer recognition, the Classic Shield Trade Dress acquired secondary meaning before Defendants' challenged use.

175. Relevant consumers have come to associate the Classic Shield Trade Dress with Taylor's Tins as the source of products bearing that overall appearance.

176. Consumers encountering Plaintiff's Classic Shield Trade Dress recognize the overall combination and arrangement of its nonfunctional design features as identifying Plaintiff as the source of those products.

177. Plaintiff acquired secondary meaning of the Classic Shield Trade Dress, demonstrated by consumers' unsolicited reactions to Defendants' substantially similar products, including inquiries regarding whether Golfire was affiliated with Taylor's Tins and observations that Golfire's products appeared to be Taylor's Tins products.

178. Defendants manufactured, advertised, distributed, and sold firefighter helmet shields incorporating a product configuration and overall commercial impression confusingly similar to the Classic Shield Trade Dress.

179. Defendants' accused products incorporate the pentagonal shield configuration, central peak, sloping side profile, tapered lower profile, and distinctive arrangement of customized wording, numbers, insignia, and banner elements described in Paragraphs 40 through 47, resulting in an overall commercial impression that is confusingly

similar to Plaintiff's Classic Shield Trade Dress and is likely to cause consumers and did in fact cause consumers to associate Defendants' products with Plaintiff.

180. Defendants' use of confusingly similar product trade dress is particularly likely to cause confusion because the parties' products directly compete, are marketed to substantially the same consumers, are offered through overlapping channels of trade.

181. Actual marketplace reactions to Defendants' products further demonstrate that consumers have confused or associated Defendants' accused products with Taylor's Tins.

182. Defendants intentionally adopted and continued using the accused product configurations with actual knowledge of Plaintiff's Classic Shield Trade Dress and after receiving express notice of Plaintiff's claimed rights and evidence of marketplace confusion.

183. Despite representing in 2022 that Golfire had ceased producing products utilizing Plaintiff's Classic Shield Design, destroyed all substantially similar materials, and completed every action demanded by Plaintiff, Defendants continued or resumed manufacturing substantially similar products and now commercially exploit those products through a third-party retailer.

184. Defendants' manufacture, advertising, distribution, and sale of products bearing confusingly similar trade dress is likely to cause and has caused confusion, mistake, or deception concerning the source, sponsorship, affiliation, connection, or approval of Defendants' products.

185. Price personally participated in, authorized, directed, approved, and controlled Golfire's manufacture and sale of the accused products and is individually liable for his own participation in the challenged conduct.

186. Defendants' conduct constitutes trade dress infringement and unfair

competition in violation of 15 U.S.C. § 1125(a)(1)(A).

187. Defendants' infringement is knowing, intentional, and willful and caused and continues to cause Plaintiff monetary and irreparable harm.

188. Plaintiff is entitled to recover all remedies available under 15 U.S.C. §§ 1116 and 1117 and other applicable law.

**COUNT IV**
**Trademark Infringement Under New York Common Law**

189. Plaintiff repeats and realleges paragraphs 1-140 as though fully set forth herein.

190. Plaintiff possesses valid and enforceable trademark rights in the TAYLOR'S TINS mark and associated source-identifying branding through its prior, continuous, and extensive use in commerce.

191. Defendants used and continue to use Plaintiff's marks and confusingly similar designations without Plaintiff's authorization or consent in connection with the advertising, promotion, offering for sale, and sale of directly competing products.

192. Defendants' challenged uses are likely to cause confusion and have caused confusion, mistake, or deception concerning the source, sponsorship, affiliation, connection, or approval of Defendants and their products.

193. Defendants had actual knowledge of Plaintiff and its rights before engaging in the challenged conduct and continue such conduct despite receiving repeated express notice of Plaintiff's objections.

194. Price personally participated in, authorized, directed, approved, and controlled the challenged conduct.

195. Defendants' conduct constitutes trademark infringement under the common

law of the State of New York.

196. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer monetary damages and irreparable injury.

197. Plaintiff is entitled to preliminary and permanent injunctive relief, damages, an accounting of Defendants' profits, and all other relief available under New York law.

**COUNT V**
**Unfair Competition Under New York Common Law**

198. Plaintiff repeats and realleges paragraphs 1-140 as though fully set forth herein.

199. Through years of substantial investment, labor, skill, expenditures, advertising, product development, design work, customer cultivation, and commercial activity, Plaintiff developed valuable goodwill in its trademarks, trade dress, product designs, customer relationships, and business.

200. Defendants knowingly and in bad faith seek to appropriate and commercially exploit the goodwill and business advantages developed by Plaintiff rather than compete solely through their own independent efforts.

201. Defendants' unfair competitive conduct includes, among other things:

a) Adopting and using terminology and branding confusingly similar to Plaintiff's trademarks and branding;

b) Using Plaintiff's TAYLOR'S TINS mark in connection with the promotion of Defendants' directly competing products;

c) Adopting the Infringing Design Logo;

d) Using photographs depicting Plaintiff's actual products in connection with

advertising and promotion of Defendants' directly competing products;

e) Manufacturing and selling products incorporating product configurations confusingly similar to Plaintiff's Classic Shield Trade Dress;

f) Obtaining, using, copying, or imitating specific custom designs and design work prepared by Taylor's Tins in connection with competing sales;

g) Continuing to manufacture products substantially similar to those Defendants previously represented they would cease producing;

h) Manufacturing those products for sale through a third-party retailer and directly fulfilling the resulting orders; and

i) Directing actual traffic from Golfire's commercial website to Taylor's Tins' website and Shield Builder so that prospective customers can appropriate Plaintiff's design resources then submit Plaintiff's designs to Golfire and complete the actual purchase from Golfire.

202. Defendants engaged in this conduct with actual knowledge of Taylor's Tins, its products, its goodwill, and Plaintiff's objections to Defendants' conduct.

203. Defendants' bad faith is demonstrated by, among other things, their direct access to designs associated with Taylor's Tins, their imitation of designs prepared by Plaintiff, evidence of actual marketplace confusion, their receipt of repeated formal notice of Plaintiff's rights, their prior representations that they would cease certain challenged conduct, and their subsequent continuation, resumption, and escalation of such conduct.

204. Defendants' conduct constitutes bad-faith misappropriation of Plaintiff's goodwill, labor, skill, expenditures, and commercial advantages and constitutes unfair competition under New York common law.

205. Price personally participated in, authorized, directed, approved, and controlled the unfair competitive conduct alleged herein and is individually liable for his own wrongful acts.

206. As a direct and proximate result of Defendants' unfair competition, Plaintiff suffered and continues to suffer damages, including lost sales and business opportunities, customer diversion, loss of control over its goodwill and reputation, and other monetary and irreparable harm.

207. Plaintiff is entitled to injunctive relief, compensatory damages, an accounting and disgorgement of Defendants' wrongfully obtained profits, and all other relief available under New York law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants Golfire, Inc. and John D. Price, Jr., jointly and severally to the extent permitted by law, and grant the following relief:

A. Enter judgment declaring that Defendants infringe Plaintiff's federally registered TAYLOR'S TINS trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;

B. Enter judgment declaring Defendants liable for false designation of origin, trade dress infringement, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

C. Enter judgment declaring Defendants liable for trademark infringement and unfair competition in violation of New York common law;

D. Preliminarily and permanently enjoin Defendants, together with their officers, agents, servants, employees, representatives, attorneys, successors, assigns, and all other persons acting in active concert or participation with them who receive actual notice of the injunction, from:

i. using the TAYLOR'S TINS mark, the terms "TIN" or "TINS" as trademarks or source identifiers for firefighter products, online retail store services or any related goods or services, or any other reproduction, counterfeit, copy, colorable imitation, or confusingly similar variation of Plaintiff's marks in connection with the advertising, promotion, manufacture, distribution, offering for sale, or sale of Defendants' products;

ii. using Plaintiff's TAYLOR'S TINS mark, including **#taylorstins**, in social-media posts, hashtags, metadata, advertising, or other promotional materials in a manner likely to cause confusion as to source, affiliation, sponsorship, or approval;

iii. using any logo, design, trade name, trademark, or other source identifier that is confusingly similar to Plaintiff's trademarks or branding;

iv. manufacturing, advertising, distributing, offering for sale, selling, or otherwise commercially exploiting firefighter helmet shields bearing trade dress confusingly similar to Plaintiff's Classic Shield Trade Dress;

v. manufacturing, supplying, distributing, or fulfilling orders for products bearing confusingly similar trade dress through any third-party retailer, distributor, reseller, or other intermediary;

vi. representing, expressly or impliedly, that Defendants or their products are affiliated with, connected with, sponsored by, authorized by, approved by, or otherwise associated with Plaintiff;

vii. using or exploiting Plaintiff's trademarks, trade dress, or other protectable source-identifying materials in a manner that constitutes infringement, false designation of origin, or unfair competition;

viii. directing, encouraging, or instructing prospective customers to access or use Plaintiff’s Shield Builder, or providing links to Plaintiff’s Shield Builder, for the purpose of designing, configuring, or creating products to be manufactured, reproduced, imitated, or sold by Defendants or any third party acting on their behalf;

ix. using, copying, reproducing, or commercially exploiting designs, mockups, renderings, or other materials generated through Plaintiff's Shield Builder or otherwise obtained through Plaintiff’s website or customer interactions for the purpose of manufacturing or selling competing products;

x. using photographs, images, renderings, or other depictions of Plaintiff’s products in advertising or promotional material for Defendants’ competing products in a manner likely to cause confusion, mistake, or deception concerning source, sponsorship, affiliation, or approval; and

xi. assisting, inducing, facilitating, or acting in concert with any other person or entity to engage in any of the foregoing conduct;

E. Order Defendants to remove from their websites, social-media

accounts, online marketplaces, advertising platforms, and other promotional channels all content determined to infringe Plaintiff's trademarks or trade dress or to constitute false designation of origin;

F. Order Defendants to remove all hyperlinks, references, instructions, advertisements, promotions, or other content directing prospective customers to Plaintiff's website or Shield Builder for the purpose of facilitating the manufacture or sale of competing products;

G. Order Defendants, pursuant to 15 U.S.C. § 1118 and other applicable law, to deliver up for destruction or otherwise dispose of all infringing labels, signs, prints, packages, wrappers, advertisements, promotional materials, products, molds, templates, and other materials in their possession, custody, or control bearing Plaintiff's marks or any confusingly similar marks or trade dress;

H. Order Defendants to provide a full accounting of all revenues, sales, profits, and other financial benefits derived from the manufacture, advertising, promotion, distribution, and sale of the infringing products and from the other unlawful conduct alleged in the Complaint;

I. Award Plaintiff, pursuant to 15 U.S.C. § 1117(a), Defendants' profits for violations of the Lanham Act, Plaintiff's actual damages, and the costs of this action, subject to the principles of equity;

J. Increase any award of actual damages and/or adjust any award of Defendants' profits to the extent permitted by 15 U.S.C. § 1117 and as the Court determines appropriate in light of Defendants' knowing and willful conduct;

K. Determine that this is an exceptional case and award Plaintiff its

reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

L. Award Plaintiff all compensatory damages, profits, and other monetary relief available under New York common law for Defendants' trademark infringement and unfair competition;

M. Award Plaintiff pre-judgment and post-judgment interest at the maximum rates permitted by law;

N. Award Plaintiff its taxable costs and disbursements incurred in this action; and

O. Grant Plaintiff such other and further legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 20, 2026

Respectfully Submitted,

**TAYLOR DYKEMA PLLC**

/s/ Edward Andrew Paltzik
Edward Andrew Paltzik, Esq.
Bar Roll No. 704929
914 E. 25th Street
Houston, TX 77009
edward@taylordykema.com
713-299-6404

**OLDER LUNDY KOCH & MARTINO**

Thomas Stanton, Esq.
Taylor C. Woolfenden, Esq.
*Pro Hac Vice* applications forthcoming
1000 West Cass Street
Tampa, Florida 33606
(813) 254-8998
tstanton@olderlundylaw.com
twoolfenden@olderlundylaw.com

*Attorneys for Plaintiff*